which is presumed to provide for proper supervision, should be licensed to practice osteopathy. Surely the Legislature did not intend to recognize a school or college which was being conducted in violation of the laws of this state, nor did it intend to recognize a school or college conducted in any other state or territory in violation of the laws of that state or territory.

It will not do to give to the words "regularly conducted school or college" the limited meaning for which the learned counsel for the relator contends, viz., that they have reference only to the regularity of the sessions and continuity of the course of study at the school or college. The word "regularly," as used in legal proceedings and statutes, has a much broader meaning, and is ordinarily used in the sense of "duly," which means "lawfully," or "legally" (24 Am. & Eng. Encyc. of Law, 243); and such, we think, is the meaning that the Legislature intended by the use of those words in the provision of the statute quoted. The relator, therefore, was not entitled either to a peremptory or to an alternative writ of mandamus.

We are of opinion, however, that the learned court placed the denial of the application on an erroneous ground. It appears that the motion was denied on the ground that certiorari, and not mandamus, is the proper remedy. If the relator were entitled to any relief in the premises, we think that mandamus, and not certiorari, would be the proper remedy. The action of the Regents of the University of the state, in considering and denying an application for a license to practice osteopathy under this statute, is not judicial, in the sense that it may be reviewed by a writ of certiorari; but its nature is executive, administrative, or ministerial, in the sense in which those terms are used by the courts in determining whether official action is reviewable by certiorari or by mandamus, or whether there may be any review at all. People ex rel. Kennedy v. Brady, 166 N. Y. 44, 59 N. E. 701; People ex rel. Schau v. McWilliams, 185 N. Y. 92, 77 N. E. 785; Matter of Walker v. Maxwell, 68 App. Div. 196, 74 N. Y. Supp. 94; People ex rel. Mc-Nulty v. Maxwell, 123 App. Div. 591, 108 N. Y. Supp. 49; Matter of North Am. Mercantile Agency Company, 124 App. Div. 657, 109 N. Y. Supp. 165; People ex rel. E. C. T. Club v. State R. Co., 190 N. Y. 31, 82 N. E. 723. See, also, Matter of Bandel v. Dept. of Health, 193 N. Y. 133, 85 N. E. 1067, 21 L. R. A. (N. S.) 49; People ex rel. Lodes v. Dept. of Health, 189 N. Y. 187, 82 N. E. 187, 13 L. R. A. (N. S.) 894; People ex rel. Wooster v. Maher, 141 N. Y. 330, 36 N. E. 396; People ex rel. Harris v. Commissioners, 149 N. Y. 26, 43 N. E. 418.

It follows, therefore, that the order should be affirmed, with $10 costs and disbursements. All concur.

---

### In re KING'S ESTATE.

(Supreme Court, Appellate Division, Second Department. December 10, 1909.)

WILLS (§ 524*)—CONSTRUCTION—TRUSTS—BEQUESTS TO CLASS.

Testatrix devised certain property to her executors, in trust to divide the proceeds equally between the nephews and nieces of her late husband, the children of his brother K., who were living at the death of her late

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

husband, and the children, also, of his sister P., share and share alike. *Held*, that the antecedent of "who" was "nephews and nieces," and that the devise should be construed as intended for the benefit of the nephews and nieces as a class, to vest in the survivors of the class at the date of testatrix's death.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1117; Dec. Dig. § 524.*]

Appeal from Surrogate's Court, Orange County.

Judicial settlement of the estate of Margaret King, deceased. From a part of the surrogate's decree, distributing the proceeds of a trust among the survivors of a specified class, Moses W. Taylor and Edna Odell appeal. Affirmed.

Argued before HIRSCHBERG, P. J., and WOODWARD, RICH, JENKS, and MILLER, JJ.

Lewis C. Platt, for appellants.

William W. Scrugham, for respondents.

MILLER, J. We are required on this appeal to construe the following paragraph of a will, viz.:

"Fourthly. I give and devise to my executors, hereinafter named, my house and lot, No. 138 Seventh avenue, west side, third door below Twentieth street, New York City, in trust, to sell the same within eighteen months after my decease, either at public or private sale, for the best price they can obtain, and give to the purchaser or purchasers a good and sufficient deed therefor, and divide the entire proceeds of such sale equally between the nephews and nieces of my late husband, being the children of his brother, Rufus S. King, of New York, who were living at the death of my late husband, and the children also of his sister, Margaret M. Petty, of Orient, Long Island, share and share alike, to them and their heirs."

Nine such nephews and nieces were living when the husband died and when the will was made. Five of them predeceased the testatrix, and the question is whether the gift was to them as individuals or as a class.

The grammatical construction is awkward, but we have little doubt that the antecedent of "who" is "nephews and nieces," and that the paragraph should be read as though the clause beginning with the relative "who" and the phrase intervening between it and its antecedent were transposed; but, with that difficulty removed, the true meaning of the paragraph is still not free from doubt. We are referred to no case, and our research has disclosed none, in this state decisive of the question. Jarman defines a gift to a class thus:

"It is a gift of an aggregate sum to a body of persons uncertain in number at the time of the gift, to be ascertained at a future time, and. who are all to take in equal or in some other definite proportions; the share of each being dependent for its amount upon the ultimate number of persons." 1 Jarman on Wills (6th Ed.) 232.

And the Court of Appeals has frequently referred to that definition with approval. Matter of Kimberly, 150 N. Y. 90, 44 N. E. 945; Matter of Russell, 168 N. Y. 169, 61 N. E. 166; Herzog v. Title Guarantee & Trust Co., 177 N. Y. 86, 69 N. E. 283, 67 L. R. A. 146. It would seem that where the testator fixes a point of time for ascer-

taining the donees, which is prior to the making of the gift, they should be considered as personæ designatæ, the same as though the gift were to them nominatim; for, in either case, the description would tend to indicate that the testator had individuals, not a fluctuating class, in mind. But in discussing cases in which the testator himself has not expressly fixed the point of time of ascertaining the objects of the gift, which he states takes the case out of the general rule, i. e., of gifts to a class, Jarman gives illustrations like this case (2 Jarman on Wills [6th Ed.] 1009); and the text is supported by the citations in the note.

Viner v. Francis, 2 Cox, 190, the leading case, involved a gift to the children of the testator's late sister. The gift was construed as though made to the testator's own children; and was held to be a gift to a class, as distinguished from the case where a definite number of donees were designated. The next case, Lee v. Pain, 4 Hare, 250, involved a gift to B. for life, with remainder to the children of B. living at his decease—plainly a gift to a class, not affected by the fact that B. died during the lifetime of the testator. In Leigh v. Leigh, 17 Beav. 605, it was decided, on the authority of Viner v. Francis, that a gift to all the present born children of a person named was a gift to a class, but only by construing that expression as referring to the time when the gift took effect. The correctness of that decision was questioned in Cruse v. Nowell, 4 Drew. 215, and in the headnote to Spencer v. Wilson, L. R. 16 Eq. 501. In the former case the Vice Chancellor plainly states the rule thus:

"If there is a bequest to certain persons nominatim, or so described as to be fixed at the time of the gift, so that there can be no fluctuation, then, if one of them dies in the lifetime of the testator, his share lapses."

In Dimond v. Bostock, L. R. 10 Ch. 358, a case difficult to distinguish from this, it was held that a bequest by a testatrix to the nephews and nieces of her late husband who were living at the time of his decease, excepting two named, was a gift to a class. In support of that decision, Lord Justice James cited Viner v. Francis, Lee v. Pain, and Leigh v. Leigh, the last being the only case really in point; and it is plain that, if the case had been one of original impression, his judgment would have been the other way. In re Smith's Trusts, L. R. 9 Ch. 117, a bequest to the five daughters of persons named was held to be a gift to them as personæ designatæ.

Of the decisions in this state, two need to be noticed. Magaw v. Field, 48 N. Y. 668, like Viner v. Francis, was a case of a gift to the children of a deceased person. Manifestly the children of A. constitute a class, whether A. be living or dead, and the mere fact that there can be no fluctuation by addition does not prove that the testator had particular individuals in mind. All in a class—i. e., all the children of A. living at the death of the testator—will take. But if, to the words "the children of A., deceased," be added "who were living at the death of A.," it would seem that the time expressly fixed by the testator, not the time of his death, should be the time of ascertaining the objects of his bounty, and that he must have had particular individuals in mind, else the phrase must be rejected as meaningless. Now, in this case, the nephews and nieces of the late husband would

constitute a class, and it would be capable of increase as well as of diminution. · If it were intended to benefit a class, not the particular individuals living at a specified time, it would seem that all who were embraced within the class at the death of the testatrix, those born after the making of the will as well as those then living, would take. If the testatrix had in mind a class (i. e., the nephews and nieces of her husband), and not particular individuals of the class, so that she might be presumed to have intended to benefit all of the class living at the time of her death, it is difficult to understand why she restricted the number by the clause "who were living at the death of my late husband." Had the gift been to "the nine nephews and nieces of my late husband," there would be no doubt, according to the cases hereinbefore cited, that the gift was to particular individuals; and it seems to me that, standing alone, the expression used by the testatrix amounts to the same thing. However, in Hoppock v. Tucker, 59 N. Y. 202, a bequest to three persons nominatim, also described as the children of a deceased daughter, was construed to be a gift to a class, because the court gleaned an intention from the other parts of the will and from the general testamentary scheme to treat such children as the representatives of their mother, and to give the entire bequest to those who should survive the testator.

The question here, then, is whether there are other words in this will which shed any light on the intention of the testatrix. It is to be noted, first, that there are no words of gift to said nephews and nieces. By the second, third, and fifth clauses of the will the testatrix made provision for her own brothers and sister. The clause in question was evidently intended to provide for the late husband's family and to devote the real property described to the purpose. To that end she directed its conversion into personalty. The gift is in terms to the executors in trust, with a direction that they sell and divide the proceeds, which indicates an intention to devote the entire property in any event to the purposes of the bequest. Had an intervening life estate been created, with a direction that, upon its termination, the trustees divide the corpus among said nephews and nieces, with no words of gift to them, the remainder, according to a well-settled rule, would not vest until the time for division arrived. I think that by analogy an intention may be gleaned from this will that the executors should divide the proceeds of the sale among such of the specified nephews and nieces as should be living at the death of the testatrix, and therefore advise, not; however, without hesitation, that the decree of the surrogate be affirmed.

Decree of the Surrogate's Court of Orange county, in so far as appealed from, affirmed, with costs to the respondents, payable out of the estate. All concur.